**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  GEORGE J. GIGOUNAS (Bar No. 209334)
   george.gigounas@us.dlapiper.com
2  JEFFREY E. TSAI (Bar No. 226081)
   jeff.tsai@us.dlapiper.com
3  **DLA PIPER LLP (US)**
   555 Mission Street, Suite 2400
4  San Francisco, CA 94105
   Tel:   (415) 836-2500
5  Fax:   (415) 836-2501

6  Attorneys for Petitioner
   MoneyOnMobile, Inc.

FILED
MAY 13 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CV 19 80 128 MISC VKD

IN RE APPLICATION OF MONEYONMOBILE, INC. DIRECTING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Misc. Action No.

*EX PARTE* PETITION FOR DISCOVERY IN AID OF FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

FAXED

1
MOMT'S EX PARTE PETITION FOR DISCOVERY

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## *EX PARTE* PETITION PURSUANT TO 28 U.S.C. § 1782

MoneyOnMobile, Inc. (MOMT) respectfully petitions this Court for an order under 28 U.S.C. § 1782 authorizing MOMT to take the deposition and document discovery of Abhishek (Abhi) Verma for use in an ongoing proceeding before the London Court of International Arbitration, which MOMT filed on October 26, 2018 (the LCIA Proceeding). Mr. Verma is a Cupertino, California resident who is not a party to the LCIA Proceeding but was, by his own intention, a driving force behind and beneficiary of the acts and transactions in dispute in that matter.

Section 1782 and its case law require that a petitioner meet three statutory requirements and the Court consider four discretionary factors in evaluating the petition. MOMT's Petition satisfies the three statutory requirements and each discretionary factor weighs in its favor:

**The Petition meets the statutory requirements of § 1782:**

1) Mr. Verma, a resident of Cupertino, California, is found within the Northern District of California;
2) The deposition and documents requested are for use in the LCIA Proceeding;
3) As a party to the LCIA Proceeding, MOMT is an "interested person" under § 1782.

**The Petition satisfies the four discretionary factors:** In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), the U.S. Supreme Court established four discretionary factors for courts to consider in § 1782 petitions, and each weighs in favor of granting MOMT's Petition here:

1) Mr. Verma is not a party to the LCIA Proceeding;
2) The London Court of International Arbitration is receptive to assistance from U.S. federal courts;
3) Seeking discovery this way is not an attempt to circumvent foreign proof-gathering restrictions or policies;
4) The discovery requests are not unduly intrusive or burdensome.

/////
/////

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Finally, the U.S. public policy objectives underlying the enactment of § 1782 are advanced by granting this Petition, because supporting and facilitating the efficacy of a contractual arbitration proceeding is precisely what the policymakers enacting § 1782 intended to do.

MOMT files this Petition *ex parte* following this Court's repeated statements that this is permissible because respondents may "raise [] objections and exercise[] their due process rights by motions to quash the subpoenas." *In re Levi Strauss & Co.*, No. 18-mc-80123-JSC, 2018 WL 3872790, at *4 (N.D. Cal. Aug. 15, 2018) (citing *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976)).

This Petition is filed pursuant to § 1782 and is based on this Petition, the Memorandum of Points and Authorities, the declaration and accompanying exhibit of George Gigounas, the declaration and accompanying exhibits of Anusha Jegadeesh, the declaration of Harold Montgomery and accompanying exhibits, the proposed order, and any further oral and documentary evidence that may be introduced at or before the hearing of this Petition.

MOMT thus respectfully requests that this Court grant it permission to serve Mr. Verma with the subpoena attached as Exhibit 1 to the Declaration of Mr. Gigounas.

Dated: May 13, 2019

DLA PIPER LLP (US)

By: _____
George J. Gigounas
Jeffrey E. Tsai
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415.836.2500
Fax: 415.836.2501

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 2 |
| III. | ARGUMENT | | 5 |
| | A. | The Legal Standard | 5 |
| | B. | MOMT Satisfies the Three Threshold Requirements of § 1782 | 7 |
| | | 1. Mr. Verma Resides or is Found in this Court's District | 7 |
| | | 2. The Discovery Sought is for Use in Ongoing Foreign Proceedings. | 7 |
| | | 3. The Applicant is an "Interested Person." | 8 |
| | C. | The Intel Discretionary Factors Weigh in Favor of Granting the Requested Discovery. | 8 |
| | | 1. Mr. Verma is Not a Party to the LCIA Proceeding. | 8 |
| | | 2. The London Court of International Arbitration is Receptive to Assistance from U.S. Federal Courts. | 8 |
| | | 3. Seeking Discovery is Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions. | 9 |
| | | 4. The Discovery Requests are Not Unduly Intrusive or Burdensome. | 9 |
| IV. | CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anwar v. Fairfield Greenwich Ltd.*,
    297 F.R.D. 223 (S.D.N.Y. 2013) ................................................................................................ 9

*In re Children's Inv. Fund Found. (UK)*,
    363 F. Supp. 3d 361 (S.D.N.Y. 2019) ..................................................................................... 7, 8

*In re Ex Parte Application of Qualcomm Inc.*,
    162 F. Supp. 3d 1029 (N.D. Cal. 2016) ...................................................................................... 7

*In re Ex Parte Application Varian Med Sys. Int'l AG*,
    No. 16-mc-80048-MEJ, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) .............................. 7, 8, 9

*In re Levi Strauss & Co.*,
    No. 18-mc-80123-JSC, 2018 WL 3872790 (N.D. Cal. Aug. 15, 2018) ................................. 2, 5

*In re Pinchuk*,
    No. 13-22857-MC, 2013 WL 5574342 (S.D. Fla. Sept. 20, 2103) ......................................... 7, 8

*Intel Corp. v. Advanced Micro Devices*,
    542 U.S. 241 (2004) ..................................................................................................... 6, 7, 8, 9

*Matter of Application of O2CNI Co., Ltd.*,
    No. C 13-80125 CRB (LB), 2013 WL 4442288 (N.D. Cal. Aug. 15, 2013) ............................. 6

**STATUTES**

28 U.S.C. § 1782 .......................................................................................................... *passim*

28 U.S.C. § 1782(a) .............................................................................................................. 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) ......................................................................................................... 7

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

MoneyOnMobile, Inc. (MOMT), a corporation organized under Texas law, provides software and mobile applications to facilitate payments through mobile telephony. MOMT pursued a significant business facilitating mobile digital payments in India through its investment in and control over two Indian companies—(i) My Mobile Payments Ltd. (MMPL), which owned the necessary intellectual property and technology for the business, and (ii) its sister company Digital Payments Processing, Ltd. (DPPL), which employed the dozens of employees necessary to run the business. At the time of the illegal takeover of MOMT's India businesses (described below), MMPL was processing approximately US $100 million per month in mobile digital payments.

As described below, Mr. Verma and his brother (an Indian resident, unlike Mr. Verma, who lives in Cupertino), were retained by MOMT as consultants in and around 2016, to assist MOMT in negotiating an exit plan for certain executive personnel of MMPL in India (specifically, MMPL's founder and Managing Director). But rather than limit their activities to this assistance, Mr. Verma and his brother orchestrated a fraudulent scheme to take over MMPL, and to strong-arm all of the employees of DPPL to resign en masse and join the conveniently named "LI-DPPL" a company they secretly formed in India after their MOMT consultancy gig, without the knowledge of the US-based MOMT. More specifically, on or before August 1, 2018, Mr. Verma, his brother, and others conspired with non-MOMT members of the MMPL board to have Mr. Verma and his father (Ram Verma), improperly added to the MMPL board of directors without MOMT's knowledge or consent. Having purported to dilute MOMT's control over the board, Mr. Verma and his co-conspirators transferred 50.4% of MMPL's shares to LI-DPPL and coerced nearly all of DPPL's approximately 300 employees into resigning that day and taking up employment with LI-DPPL.

Besides being unlawful, the scheme and share transfer plainly violated the terms of the contracts by which MOMT invested in, and was to gain control over, MMPL and DPPL—a 2012 Memorandum of Understanding (MOU), 2012 Share Subscription and Shareholders' Agreement (SSSA), and their subsequent additions and amendments. Both the MOU and SSSA ██████
██████████████████████████████████████

1

MPA ISO MOMT'S EX PARTE PETITION FOR DISCOVERY

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

███████████████████████████████████████. In attempts to combat the fraud, MOMT quickly initiated several injunctive and interim actions in India, and the LCIA Proceeding against MMPL, DPPL, and the individual co-conspirators (each Indian nationals) ██████ ███████████████████. In the LCIA Proceeding, MOMT seeks specific performance of the MOU and the SSSA.

Despite Mr. Verma's leading role in the unlawful takeover, he has not been impleaded because he was not a party to either the MOU or the SSSA. MOMT seeks authority to issue a subpoena to Mr. Verma for testimony and documents, because he orchestrated and was intimately involved in the MMPL takeover. He indisputably has personal knowledge and documents pertaining to the dispute that are relevant and critical to the LCIA Proceedings. MOMT seeks the discovery specifically to aid the LCIA Proceedings.

*Importantly*, for the purposes of this Petition, this Court need not adjudicate, evaluate, or opine on the facts of Mr. Verma's wrongdoing or the merits of the LCIA Proceeding. The Court need only make the determination that the statutory requirements of § 1782 are met by the legitimate dispute in arbitration, and that the discretionary factors set forth by the U.S. Supreme Court weigh in favor of granting the Petition. They do.

This Court has repeatedly affirmed that *ex parte* procedures to make this Petition are permissible, since respondents may "raise [] objections and exercise[] their due process rights by motions to quash the subpoenas." *In re Levi Strauss & Co.*, No. 18-mc-80123-JSC, 2018 WL 3872790, at *4 (N.D. Cal. Aug. 15, 2018).

II.   **FACTUAL BACKGROUND**

*(Again, this Court need not adjudicate the facts of this dispute to evaluate the Petition— these facts are provided as context and background for the Court's consideration of the statutory and discretionary factors relevant here.)*

In 2012, principals from MOMT[1], a U.S.-based corporation, and MMPL, then an Indian

---

[1] Until 2016, MOMT operated under the name Calpian, Inc. For purposes of this Petition, all references to MOMT refer to MOMT and/or Calpian as MOMT's predecessor entity. *See* Montgomery Decl., ¶ 3.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

company, met and discussed a sale of MMPL's business processing mobile payments in India. Declaration of Harold Montgomery (Montgomery Decl.), ¶ 3. MOMT agreed to ▮▮▮▮▮▮ over time, on the conditions that (a) for Indian legal/regulatory reasons, ▮▮▮▮▮▮, and (b) ▮▮▮▮▮▮. *Id.*

On March 23, 2012, MOMT, ▮▮▮▮▮▮ executed a Memorandum of Understanding, and on August 8, 2013, MOMT, ▮▮▮▮▮▮ executed an amendment to the Memorandum of Understanding (collectively, the MOU). *Id.*, ¶ 4, Ex. 1. Under the MOU, ▮▮▮▮▮▮. *Id.* It was the parties' understanding that MMPL and DPPL were to be run and treated as a single entity ▮▮▮▮▮▮. *Id.* ▮▮▮▮▮▮. *Id.* In either scenario, ▮▮▮▮▮▮. *Id.*

On March 23, 2012, MOMT, ▮▮▮▮▮▮, and on August 8, 2013, the parties executed an amendment to the Share Subscription and Shareholders Agreement (collectively, the SSSA). *Id.*, ¶ 5, Ex. 2. The SSSA ▮▮▮▮▮▮. *Id.* The SSSA also contained ▮▮▮▮▮▮. *Id.*

From 2012 to 2018, MOMT made investments to MMPL and DPPL, totaling to $21,335,001—▮▮▮▮▮▮. *Id.*, ¶ 6, Ex. 3.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Separately, in 2016, MOMT was having difficulty managing the executive staff of MMPL. *Id.*, ¶ 7. MOMT's CEO, Harold Montgomery, was introduced to Mr. Verma's brother through a mutual contact and, in August 2016, MOMT entered into a consulting contract with Mr. Verma and his company (LexInnova Technologies, Inc.) to negotiate the buyout of members of the Indian management team. *Id.*, ¶ 7, Ex. 4. Through this consulting relationship, the Verma brothers became acquainted with the Indian management team of MMPL. MOMT later learned that Mr. Verma's brother has a history of business fraud and was on bail on charges of money laundering. *Id.*, ¶ 8, Ex. 5.

On February 28, 2018, unbeknownst to MOMT, Mr. Verma and his brother incorporated a new company called LI Digital Payments Private Limited (LI-DPPL). *Id.*, ¶ 9, Ex. 6. MOMT believes this name was chosen with the specific intention of confusing and deceiving vendors, banks, and the State Bank of India. Mr. Verma and his brother named their parents as shareholders and directors in the LI-DPPL incorporation documents. *Id.*

On August 1, 2018, Mr. Verma, his brother, and the Indian management team added three new Directors to the MMPL Board ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓, and Indian corporate law. *Id.*, ¶¶ 10-11. Filings with the Ministry of Corporate Affairs show that the new Directors consented to their appointments as early as July 25, 2018. *Id.*, Ex. 7. The added board members included Mr. Verma and his father, both also Directors of the newly formed LI-DPPL. *Id.* MOMT did not learn about the new board members until August 1, 2018, when it received an email from the Ministry of Corporate Affairs listing the new directors. *Id.*, ¶ 11, Ex. 8. These improperly added directors diluted MOMT's voting power on the MMPL Board.

On July 31, 2018, the Indian MMPL management team provided notice for an MMPL Board meeting to be held on August 1, 2018, at 1:30 p.m. India Standard Time, or 3:00 a.m. in Houston, Texas, MOMT's headquarters. *Id.*, ¶ 12, Ex. 9. The circulated agenda did not mention either appointment of any new directors. *Id.* MOMT's nominees on the MMPL Board requested that the meeting be convened at a more convenient time and objected to the meeting on grounds that the meeting agenda included confirmation of the minutes from a previous Board meeting where

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Mr. Montgomery was removed as Chairman of the MMPL Board, an action that MOMT had petitioned to stay in Bombay High Court. *Id.*, ¶ 13, Ex. 10. The Indian MMPL management team disregarded MOMT's protests and proceeded to conduct the meeting. *Id.*, ¶ 14.

Later that day, MOMT learned from certain loyal DPPL employees that at the meeting, with no apparent business justification or consideration, the MMPL Board had approved transfer of 50.4% of the shares in MMPL to Mr. Verma's company, LI-DPPL. *Id.*, ¶ 15, Ex. 11. ███████ ████████████████████████████████████████████████████████ ███████████████████. *See id.*, Ex. 1.

On or about August 2, 2018, Mr. Verma and his co-conspirators demanded that all DPPL employees sign identical resignation letters and immediately sign an employment agreement with LI-DPPL. Those that resisted cooperating with these demands were threatened with termination. *Id.*, ¶ 16, Ex. 12.

In reaction to the unlawful takeover, MOMT petitioned the High Court of Judicature at Bombay seeking, among other things, to suspend the improperly appointed MMPL board members. Declaration of Anusha Jegadeesh (Jegadeesh Decl.), ¶ 3. Recognizing the validity of the dispute, the Court directed Mr. Verma and his father not to act as directors until a future date. *Id.*, Ex. 1. The Court further held that regarding the shares, all parties were to maintain the status quo as of August 3, 2019. *Id.* The August 3 Order is still in effect. *Id.*, ¶ 4.

On October 26, 2018, MOMT filed a request for arbitration before the LCIA against MMPL and certain of its founders and shareholders seeking specific performance of the MOU and the SSSA. *Id.*, ¶ 5, Ex. 2. The Tribunal was constituted on February 19, 2019. *Id.*, ¶ 6. No hearings have been conducted and the Parties have not yet submitted any substantive pleadings and the fact gathering process is still underway. *Id.*

## III. ARGUMENT

### A. The Legal Standard

An *ex parte* application seeking the relief sought here is appropriate under § 1782 and this Court's precedent because respondents may "raise [] objections and exercise[] their due process rights by motions to quash the subpoenas." *In re Levi Strauss & Co.*, 2018 WL 3872790, at *4.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Under 28 U.S.C. § 1782, this Court has broad discretion to authorize the collection of evidence from persons located within its jurisdiction for use in "a proceeding in a foreign or international tribunal" upon the application of an "interested person." Specifically, § 1782(a) states:

> The district court of the district [where] a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made ... upon the application of any interested person ... [and unless] prescribe[d] otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. 28 U.S.C. § 1782.

In *Intel Corp. v. Advanced Micro Devices*, the seminal case on § 1782 applications, the U.S. Supreme Court held that § 1782 requires the applicant to meet three threshold conditions:

(1) the person from whom discovery is sought resides or is found in the district of the court to which the application is made;

(2) the application is made by a foreign or international tribunal or any "interested person"; and

(3) the discovery is "for use in a proceeding in a foreign or international tribunal." 542 U.S. 241, 246 (2004).

The Supreme Court also held that district courts should consider the following four discretionary factors:

(1) whether the evidence sought is within the foreign tribunal's jurisdiction;

(2) the nature of the foreign tribunal and its receptivity to United States judicial assistance;

(3) whether the request is an attempt to circumvent the foreign proof-gathering restrictions or other policies of the foreign country or the United States; and

(4) whether the request is unduly intrusive or burdensome. *Id.* at 264-265.

This discretion should be exercised in light of "the twin aims of § 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar means of assistance to our courts." *Matter of Application of O2CNI Co., Ltd.*, No. C 13-80125 CRB (LB), 2013 WL 4442288, at *5 (N.D. Cal. Aug. 15, 2013) (citations omitted).

/////

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

### B. MOMT Satisfies the Three Threshold Requirements of § 1782

#### 1. Mr. Verma Resides or is Found in this Court's District.

Upon information and belief, Mr. Verma resides in Cupertino, California. Jegadeesh Decl. ¶ 8. *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016) (entities were "found in" the district because they maintained offices in the district).

#### 2. The Discovery Sought is for Use in Ongoing Foreign Proceedings.

In enacting § 1782, "Congress recogni[zed] that judicial assistance would be available 'whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, or other nature.'" *Intel*, 542 U.S. at 259. MOMT's Petition seeks discovery "for use in a proceeding in a foreign or international tribunal," because MOMT is seeking discovery for use in the ongoing LCIA Proceedings. Jegadeesh Decl. ¶ 7. The London Court of International Arbitration is one of the world's leading international institutions for commercial dispute resolution (*id.*, ¶ 2), and is a foreign or international tribunal under § 1782. *See In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 370 (S.D.N.Y. 2019) (concluding that LCIA is a foreign tribunal under § 1782); *In re Pinchuk*, No. 13-22857-MC, 2013 WL 5574342, at *1 (S.D. Fla. Sept. 20, 2103) (same).

To be "for use" in a foreign proceeding, an applicant need prove that the discovery sought is "relevant" to a party's claim, consistent with the Federal Rules of Civil Procedure. *See, e.g., In re Ex Parte Application Varian Med Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *5 (N.D. Cal. Mar. 24, 2016) ("the proper scope of the discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure"); *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim").

The subpoena this Petition seeks to authorize is tailored for discovery directly relevant to the LCIA Proceeding. Jegadeesh Decl. ¶ 7. For instance, it seeks documents and/or information relating to:

- the formation and incorporation of LI-DPPL;
- agreements between MMPL and Mr. Verma's companies;

- the appointment signatories to the MMPL bank accounts; and
- any investments made by Mr. Verma directly or through his companies to LI-DPPL or MMPL.

This information, and all other information sought under the subpoena, will substantiate MOMT's argument that certain of MMPL's founders and shareholders breached the MOU and SSSA. *Id.* This satisfies the "for use" requirement under § 1782.

### 3. The Applicant is an "Interested Person."

As a party to the LCIA Proceeding, MOMT is an "interested person" under § 1782. *See In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d at 372.

### C. The *Intel* Discretionary Factors Weigh in Favor of Granting the Requested Discovery.

All four of the discretionary *Intel* factors weigh in favor of this Court granting MOMT's Petition.

### 1. Mr. Verma is Not a Party to the LCIA Proceeding.

First, Mr. Verma is not and cannot be a named party to the LCIA Proceeding, and the LCIA has no other means to compel the production of the evidence sought here. Jegadeesh Decl. ¶ 8. As Mr. Verma is not a participant in the LCIA Proceeding, he is not subject to the jurisdictional reach of the Tribunal. Because the LCIA has no means other than through this Petition to obtain the information sought, the evidence MOMT seeks is likely "unobtainable . . . absent § 1782 aid[.]" *Intel*, 542 U.S. at 244. The first *Intel* factor weighs in favor of granting MOMT's Petition.

### 2. The London Court of International Arbitration is Receptive to Assistance from U.S. Federal Courts.

Second, there is no indication that the LCIA is not receptive to U.S. Federal Court assistance. *See Intel*, 542 U.S. at 264. Other federal courts have recently granted § 1782 discovery for use in LCIA arbitrations. *See, e.g., In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d at 374; *In re Pinchuk*, 2013 WL 5574342 at *1 (same). Where there is no "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," courts tend to "err on the side of permitting discovery." *See In re Ex Parte Application Varian Med. Sys. Int'l AG*,

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

2016 WL 1161568, at *4 (citation omitted). Moreover, the LCIA has given no indication that it would discourage or refuse to consider any relevant evidence, including evidence gathered from Mr. Verma pursuant to the requested subpoena. Jegadeesh Decl. ¶ 9. The second *Intel* factor therefore weighs in favor of granting MOMT's Petition.

### 3. Seeking Discovery is Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions.

Third, the discovery requests do not seek to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. There are no restrictions or policies of the United States or the LCIA that would prohibit the collection of the discovery sought. Jegadeesh Decl. ¶ 9. MOMT's application is not an end-run around the LCIA's discovery policies or procedures or the policies of the United States. Through the narrowly tailored discovery requests, MOMT seeks to obtain evidence to use in support of the LCIA Proceeding.

### 4. The Discovery Requests are Not Unduly Intrusive or Burdensome.

Fourth, the discovery sought here is narrowly tailored in subject matter and date range, so as to solicit only information that will be relevant to the claims being adjudicated by the LCIA. The subpoena provides a circumscribed date range and seeks only documents and testimony directly related to Mr. Verma's involvement in the formation of LI-DPPL and takeover of MMPL. While Mr. Verma may argue that the discovery requests are burdensome, "inconvenience" will not support an order to quash a subpoena that seeks potentially relevant testimony, let alone the petition that seeks authorization to serve a subpoena in the first place. *See Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013). Further, Mr. Verma is the founder and CEO of LexInnova Technologies, LLC, a legal services and technology company that specializes in, among other things, eDiscovery. Gigounas Decl. ¶ 2. He is thus likely quite familiar with the process for collecting and producing documents pursuant to a subpoena. Without particularized evidence that the production would be unduly burdensome or costly, this Court should find that the discovery requests are narrow in scope and proportional to the needs of the LCIA Proceeding.

Finally, MOMT is pursuing the LCIA Proceeding in compliance with the agreement by the

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

parties to the MOU and SSSA to use an alternative dispute resolution vehicle, *i.e.*, international arbitration, to resolve disputes—the pursuit and support of ADR advances well-known public policy of this Court and the U.S. judiciary system, favoring the expeditious resolution of international disputes.

## IV. CONCLUSION

While the facts of the underlying dispute under the MOU and SSSA are intriguing and complex, they need not be resolved by this Court. The issue before this Court is straightforward—the Petitioner seeks authorization under § 1782 to serve a subpoena on Mr. Verma, for testimony and documents. The Petition demonstrates that the statutory and discretionary factors are satisfied. Petitioner respectfully requests that this Court issue an order granting the Petition and authorizing the issuance of the subpoena attached as Exhibit 1 to the Gigounas Declaration.

DATED: May 13, 2019

DLA PIPER LLP (US)

_____
George J. Gigounas
Jeffrey E. Tsai
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415.836.2500
Fax: 415.836.2501

Attorneys for MoneyOnMobile, Inc.